


AO 91 (Rev. 11/11) Criminal Complaint      AUSA Thomas P. Peabody (312) 353-4307

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> JEFFREY CALABRESE | CASE NUMBER: 1:25-cr-00215 <br><br> **UNDER SEAL** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about April 16, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, JEFFREY CALABRESE, the defendant, violated:

*Code Section*           *Offense Description*

18 U.S.C. § 875(c)      made a true threat in interstate commerce

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

ROBERT L. RICHARDSON III
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: April 22, 2025

Judge's signature

City and state: Chicago, Illinois

BETH W. JANTZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, ROBERT L. RICHARDSON III, being duly sworn, state as follows:

### INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been in this position since April 2023. Prior to becoming a Special Agent, I was an Intelligence Analyst with the FBI from January 2021 to April 2023. I am responsible for investigations concerning threats to life, terrorism, and other violent offenses, and I am currently assigned to the Joint Terrorism Task Force in the FBI's Chicago Office.

2. This affidavit is submitted in support of: (1) a criminal complaint alleging that JEFFERY CALABRESE has violated 18 U.S.C. § 875(c) by making threats in interstate commerce to injure another person (the "**Subject Offense**"); (2) an application for a search warrant to search CALABRESE's cellular telephone, with number (312) 515-2134 (the "**Subject Phone**"), as described in Attachment A, for evidence and instrumentalities of the **Subject Offense**, as described in Attachment B. Because this affidavit is being submitted for the limited purpose of securing a complaint against CALABRESE and a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe establish probable cause to believe that CALABRESE has committed the **Subject Offense** and evidence and

instrumentalities of the **Subject Offense** will be found during a search of the **Subject Phone**.

3. This affidavit is based on my personal knowledge, recordings received during the investigation, information provided to me by other law enforcement agents, interviews of witnesses, my experience and training, and the experience of other agents. Based on the facts set forth in this affidavit, there is probable cause to believe that JEFFERY CALABRESE has violated § 875(c), the **Subject Offense**, by transmitting threats in interstate commerce, and a search of the phone he used to do so, the **Subject Phone**, will reveal evidence and instrumentalities of that offense.

## PROBABLE CAUSE

4. In summary, and as set forth below, between April 13, 2025, and April 18, 2025, JEFFREY CALABRESE, a Chicago resident, called from the **Subject Phone** and left voicemails to Church A, located in Arizona, including harassing messages for Pastor A and Pastor B of Church A, in which CALABRESE threatened to kill them. These messages include a voicemail for Church A, which CALABRESE left on April 16, 2025, stating: "You better keep a gun, [Pastor B], [Pastor B], [Pastor B], ... you go run with your executive, right to court because I'm going to fucking kill you" and "I'm going to fucking smear your face in a cactus. You understand that? You better call the police, [Pastor B], because it sounds like I'm threatening you, doesn't it?" On April 18, 2025, CALABRESE confirmed to FBI agents that he intended the messages to be threatening. According to Individual A,

a family member of CALABRESE's ex-spouse, as well as Pastor A, CALABRESE's family in Arizona has attended Church A.

5. CALABRESE is a 57-year-old white male. According to government databases, his criminal history includes a 2021 misdemeanor conviction for aggravated harassment in an Arizonan court. According to CALABRESE's mother, he has lived in Chicago for about a year. According to witness interviews and its website, Church A is a Christian church in Tucson, Arizona; Pastor A, who was born in Iran, is its lead pastor; Pastor B is its executive pastor; and both reside in Arizona and were located in Arizona during the events described below. Individual A is a member of Church A, according to Individual A. According to Individual A, CALABRESE also has two children with his ex-spouse: Individual B and Individual C, who are both in their mid-to-late 20s and have also attended and been involved in Church A.

6. Church A reported to the FBI that the **Subject Phone** had left several threatening voicemails on Church A's phone concerning Pastor A, Pastor B, and Individual A. FBI received recordings of these voicemails. Based on my review of the recordings[1]:

    a. On or about April 13, 2025, at approximately 7:28 p.m. Mountain Standard Time, the **Subject Phone** called Church A and the caller

---

[1] Based on my review of the recordings I received from Church A, the messages were all made by the same person given the similarity of the voice. As explained below, the caller identifies himself as CALABRESE and CALABRESE later admitted to threatening Pastor A.

The quotes contained in this affidavit from the recordings are in draft form and subject to change upon further review.

3

stated: "[Y]ea this is Jeffery Calabrese." At approximately 7:41 p.m., the **Subject Phone** again called Church A and the caller stated: "This is Jeffery Calabrese and I want to leave my phone number. Its Chicago area code 3125152134 [the **Subject Phone**] ... And you're lucky we don't have fatwa[2] on you 'cuz that's coming next ... We're going to expose you to the Taliban and Al Qaeda and the ISIS Levant." At approximately 8:02 p.m., the **Subject Phone** again called Church A, and the caller stated, among other things: "[T]his is Jeffery Calabrese and I want the Pima County Sheriff and the Oro Valley anybody that's an authority to know that I'm calling you and leaving this message for" Individual A "and I want this message – where is that phone number – its 312515 something." CALABRESE continued, "let me get you my phone number... I want you to call me back. I want you to give it to you 312 515."

  b. On or about April 15, 2025, at 10:14 p.m. MST, the **Subject Phone** again called Church A, and the caller stated, among other things: "It ain't over by a long shot ... it will be over for you – oh – it'll be over for you in a little while."

  c. On or about April 16, 2025, at approximately 6:35 a.m. MST, the **Subject Phone** called Church A and left an approximate two-minute, 45-second message in which the caller stated, among other things:

> I want you to have a gun every day. I want you to sleep with a gun. I want you to drive with a gun. Oh, especially on your little Harley Davidson[3] .... I especially want you to take a gun into your

---

[2] A "fatwa" is an Islamic legal ruling on a particular issue. In some cases (see *infra* n. 4), it amounts to a "hit" on a perceived dissident from the Government of Iran or Sharia law.

[3] According to Pastor A, he does own a Harley Davidson, though he did not believe that information to be public or on any of his social media accounts.

congregation, especially on Sunday morning. I want you to think that I'm showing up. I want you to think this might be the day – this might be the day that you go down. Oh, it will not be kind on you. Oh, it'll be slow like the Navajo, when they take somebody, and they impale them on the open ground ... and ants come and eat them alive ... What Jesus do you worship? I don't know [Pastor A] ...

You got a fatwa. You know what a fatwa is, you dumbass Muslim? You think they ain't gonna find you? I've got Salman Rushdie[4] kind of Taliban ....

I'm coming for you ... I want you every day to think, this is the day that Jeffrey is coming to gouge your fucking eyes out and piss in your face. Do you understand that? You molested my children ... You only have Jesus in this lifetime. I don't know about your next one buddy. But it's coming pretty soon. And it will be by my hand, a Roman Catholic Caucasian. Or it will be by one of your own kind. You fucking [UI]. You're dead meat, you understand that? Dead meat!

    d.    On or about April 16, 2025, the **Subject Phone** called Church A and left a nearly three-minute-long message in which the caller stated, among things: "You better keep a gun, [Pastor B], [Pastor B], [Pastor B], ... you go run with your executive, right to court because I'm going to fucking kill you" and "I'm going to fucking smear your face in a cactus. You understand that? You better call the police, [Pastor B], because it sounds like I'm threatening you, doesn't it?"

    7.    On or about April 17, 2025, the FBI made an emergency disclosure request of Verizon, the **Subject Phone**'s provider, which Verizon granted. Verizon began providing location information to the FBI for the **Subject Phone**. That location information showed the **Subject Phone** in the Chicago area.

    8.    On April 18, 2025, FBI Special Agents interviewed CALABRESE near

---

[4] For background on Salman Rushdie, the fatwa against him, and a resulting attack, see, for example, https://abcnews.go.com/US/salman-rushdie-speaks-stabbing-claimed-life-taking-power/story?id=109234123.

5

his residence in Chicago. CALABRESE, who appeared inebriated, stated his name was "Jeffrey Arizona" and he provided his identification card to agents. CALABRESE stated that he knew why FBI agents were talking to him and repeatedly referenced "child pedophilia" and claimed his children were molested. CALABRESE admitted to calling Pastor A, stated he "wanted to be on record," and stated that he was going to murder "that little fucking Muslim." Later in the interview, CALABRESE stated "I want to hear that they are afraid" and that he would "fucking murder them." He added: "Oh am I threatening the life of [Pastor A]? A Muslim in Tucson, Arizona. Oh yea." He also stated: "Did I threaten to murder him – oh savagely" and "Oh, it's a hit, you're lucky I didn't fly in on it."

9. Following the interview, the Chicago Police Department took CALABRESE into custody and he was involuntarily committed to a hospital behavioral unit. According to a supervisor with the unit, the commitment is expected to last between 7 and 10 days.

**SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA**

10. Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled

environment. This is almost always true because of the following:

    a. Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

    b. Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

11. In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system

software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

12. In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain evidence or were used to carry out criminal activity.

13. Based on my training and experience, and my involvement in this matter, individuals, like CALABRESE, who commit the **Subject Offense** do so often using electronic means, as CALABRESE did with the **Subject Phone**, are likely to have evidence of the **Subject Offense** on such device, such as call logs, messages associated with victims, research concerning the victims on web-based applications, indicia of ownership and use during the relevant periods, and other information.

### PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA AND AUTHORIZATION REQUEST

14. Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

15. The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a. examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above;

c. surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d. opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

16. The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

## CONCLUSION

17. Based on the above, I submit there is probable cause to believe that CALABRESE has committed the **Subject Offense**, namely, making threats in interstate, and that evidence and instrumentalities of the **Subject Offense**, described more fully in Attachment B, are likely to be found in the **Subject Phone**.

FURTHER AFFIANT SAYETH NOT.

_____
Robert L. Richardson III
Special Agent, Federal Bureau of Investigation


SWORN TO AND AFFIRMED by telephone this 22nd of April, 2025.

_____
Honorable BETH W. JANTZ
United States Magistrate Judge